UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES MACKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:12CV893 TIA |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration. The suit involves Applications for Disability Insurance Benefits under Title II of the Social Security Act and for Supplemental Security Income under Title XVI of the Act. Claimant has filed a Brief in Support of his Complaint, and the Commissioner has filed a Brief in Support of her Answer. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.    Procedural History**

On July 16, 2009, Claimant James Macke filed Applications for Disability Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 102-05) and for Supplemental Security Income payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is therefore substituted for Michael J. Astrue as the Defendant in this action.

et. seq. (Tr. 109-24).[2] Claimant states that his disability began on December 1, 2007,[3] as a result of chronic depression, anxiety mania, and ADHD. (Tr. 47). On initial consideration, the Social Security Administration denied Claimant's claims for benefits. (Tr. 48-52). Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 74-75). On July 8, 2010, a hearing was held before an ALJ. (Tr. 15-44). Claimant testified and was represented by counsel. (Id.). Vocational Expert Dr. John McGowan also testified at the hearing. (Tr. 35-42, 92-94). Thereafter, on November 22, 2010, the ALJ issued a decision denying Claimant's claims for benefits. (Tr. 6-14). On April 17, 2012, the Appeals Council found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision. (Tr. 1-3). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

### A. Hearing on July 8, 2010

#### 1. Claimant's Testimony

At the hearing on July 8, 2010, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 16-44). Claimant is forty-four years old and his birth date is June 11, 1966. (Tr. 20). Claimant lives with his parents in their home. (Tr. 20). Claimant graduated from high school and has some college credits. (Tr. 21). Claimant is right-handed. (Tr. 21). Claimant stands at five feet nine inches and weighs 165 pounds. (Tr. 22). Claimant receives medical treatment at the Family Health Care Center, a sliding scale clinic, and his parents pay for

---

[2]"Tr." refers to the page of the administrative record filed by the Defendant with her Answer (Docket No. 13/filed July 27, 2012).

[3]Although Claimant originally alleged an onset date of December 31, 2005 in his applications, at the hearing, he amended his onset date to December 1, 2007. (Tr. 9, 18,102, 109, 125).

- 2 -

him. (Tr. 22-23). Claimant's driver's license was revoked in Missouri for driving while suspended license. (Tr. 28).

Claimant last worked in December 2007 at Caffe D'Amore, a coffee shop, in California. (Tr. 23). Claimant testified he was fired, because he had problems coming to work late. (Tr. 24). At that time, he was borderline homeless and had a decompression, so the City of San Francisco paid for his bus tickets as part of the homeward bound program. (Tr. 24).

Claimant testified that he is unable to work because he is depressed and anxious and cannot communicate well with co-workers. (Tr. 28). He cannot complete tasks without supervision because he becomes distracted and then starts another task without completing the first task. (Tr. 28-29 ). Claimant testified that he has problems following directions at work because he would become distracted and get off track. (Tr. 30). He explained how working coffee jobs requires the ability to multi-task. (Tr. 30). Claimant experienced panic attacks at work once every couple of months, and he would step away from work for ten to fifteen minutes. (Tr. 31).

Claimant testified that Rocky, a therapist, and Dr. Zinck treat him at the Family Health Center. (Tr. 25). Claimant has two diagnosis, ADHD and cannabis abuse. Claimant testified that he smokes marijuana once or twice a week. (Tr. 25). Claimant has had one psychiatric hospitalization in San Francisco after overdosing on Aspirin. (Tr. 26). After ingesting fifty pills, he called the crisis line, and the police took him to the hospital. (Tr. 26). While working, Claimant had suicidal thoughts three to four times a week. (Tr. 32). Now that he is not working and does not have work stresses, Claimant has suicidal thoughts once or twice a month. (Tr. 32).

Claimant testified that sometimes he helps with chores by sweeping the floor, washing dishes, washing his clothes, making his bed, and taking care of the cats. (Tr. 34).

At the close of the hearing, the ALJ asked counsel to obtain the records from the psychiatric hospitalization in San Francisco. (Tr. 43).

### 2. Testimony of Vocational Expert

Vocational Expert testified in response to the ALJ's questions. (Tr. 35-42). Dr. John F. McGowan classified Claimant's work within the last fifteen years as a waiter in coffee shops. (Tr. 35). Dr. McGowan explained that there is no title for waiter/dining room attendant in a coffee shop but the DOT 311.477-030, waiter/waitress/dining room attendant describes exactly what Claimant did including serving food to patrons at counters and coffee shops and making coffee. (Tr. 36-37).

The ALJ asked Dr. McGowan to assume that

> a hypothetical individual with the age, education, and work experience of Mr. Macke, who has not exertional limitations, and who had the mental residual functional capacity as assessed by the agency reviewing psychologist, ... ; and, the agency PhD psychologist is Kyle Devore.... Assume that an individual with the age, education, and work experience of the Claimant, has no exertional limitations, and that all 20 of the factors that are rated, ... , are not significantly limited, with the exception of the following, which are moderately limited -- ability to understand and remember detailed instructions; Item 5, ability to carry out detailed instructions; Item 6, ability to maintain attention and concentration for extended periods; Item 14, ability to accept instructions and respond appropriately to criticism from supervisors; and, Item 17, ability to respond appropriately to changes in the work setting. Those five items are moderately limited, but the remaining 15 are not significantly limited. Could any of the past work be done?

(Tr. 37-39). Dr. McGowan responded as long as the five items are moderately limited, he would say yes but iffy because the jobs are fast paced with little tolerance for errors. (Tr. 39).

Next, the ALJ asked Dr. McGowan to assume no past work could be performed, "[w]ould any other work be available to such an individual with the age, education, and work experience of Mr. Macke? (Tr. 39-40). Dr. McGowan responded yes assuming light limitations so the job must be simple. (Tr. 40). Dr. McGowan noted keeping the jobs in fast food work, the DOT 311.472-010 would be light and unskilled jobs, very simple, one or two-steps cooking. Dr. McGowan testified there would be 21,400 such jobs in the St. Louis metropolitan area and half that number, 10,400, nationally. (Tr. 40). Dr. McGowan further testified that Claimant could perform other jobs such as packing and filling machine operator with a light level and unskilled and 5,720 jobs in Missouri and 261,000 jobs nationally. (Tr. 41). Dr. McGowan explained such jobs are primarily packaging medical supplies. Dr. McGowan testified that he could list a whole series of jobs within the light, unskilled lever Claimant could perform. As another example, Dr. McGowan noted Claimant could perform the job of bench assembler, unskilled, light work with 3,900 jobs in metropolitan St. Louis area, 8,600 jobs in Missouri, and 345,000 jobs nationally. (Tr. 41).

Claimant's counsel asked Dr. McGowan to add the following to the hypothetical: "that the person would need to take unscheduled breaks from the work area, lasting up to 15 minutes, two to three times a week. Would that be compatible with any of the jobs you've cited?" (Tr. 42). Dr. McGowan responded such worker would be terminated if the breaks were a consistent pattern. Dr. McGowan noted the direct unskilled jobs would be precluded inasmuch as there is little tolerance for missing work on these jobs. (Tr. 42).

### 3. Open Record

At the conclusion of the hearing, the ALJ determined that the record needed to be further developed and stated that the record would be held open for thirty days so that claimant's counsel

could submit the medical records from the psychiatric hospitalization in San Francisco, and he could request that the State Disability Agency arrange for a psychological evaluation with MMPI testing. (Tr. 42-43). A review of the record shows that counsel timely submitted additional evidence to the ALJ before he issued a decision denying Claimant's claims for benefits. (Tr. 245-73). A review of the record further shows that Disability Determinations timely submitted a psychological evaluation as directed by the ALJ before he issued the decision denying Claimant's claims for benefits. (Tr. 175-76, 234-44).

### 4. Forms Completed by Claimant

In the Disability Report - Adult, Claimant described his job duties as a coffee shop worker/preparer as mixing coffee/lattes and serving them to customer along with other things such as croissants. (Tr. 140-42). Although Claimant listed Dr. Donald Tarver as a psychiatrist who treated him from 2000 to August 2008, there are no treatment records from Dr. Tarver in the administrative record. (Tr. 143).

In the Missouri Supplemental Questionnaire, Claimant reported being able to play video games, puzzles or use computers for two hours in one sitting. (Tr. 147-48).

## III. Medical Records

On July 17, 2008, Claimant was discharged from San Francisco General Hospital Medical Center for treatment after taking twenty aspirins. (Tr. 248). Claimant was admitted for a 72-hour detention for evaluation and treatment. (Tr. 257). Claimant reported having been living with boyfriend and the relationship has been going downhill. (Tr. 261). Claimant indicated he has been treated by Dr. Donald Tarver, a psychiatrist. (Tr. 261). Claimant reported recently finishing culinary school and making minimal attempts to locate a job. (Tr. 263). The doctor listed chronic

depression with stressors including increasing pressure to live independently and recent stopping of antidepressants. (Tr. 272).

On August 20, 2008, Claimant established care at the Family Health Care Center. (Tr. 194). Claimant reported having a history of depression and attempting suicide. (Tr. 194). He finished a program at the culinary academy. (Tr. 193). Claimant reported frequently using marijuana several times a week, but he decreased usage since moving to St. Louis. Claimant completed a culinary academy. Claimant reported feeling his depression to be stable, and his suicide attempt being a cry for help. Dr. Darryl Zinck noted Claimant's depression appeared to be stable and prescribed Wellbutrin and Lexapro as treatment. (Tr. 193). In follow-up treatment on November 4, 2008, Claimant reported his mood having improved. (Tr. 191).

On January 8, 2009, Claimant reported wanting to establish care with a psychiatrist at St. Louis University to help him cope with his stressors. (Tr. 190). Dr. Zinck changed his Wellbutrin dosage and added Celexa to his medication regime. (Tr. 190). On February 5, 2009, Dr. Zinck arranged for a further psychiatric evaluation and maintained his current medications. (Tr. 189).

Claimant returned on April 9, 2009, and reported being out of medications. (Tr. 188). His mood had been fairly stable since last visit to the Family Care Health Center. Claimant reported wanting to get a part-time job as a baker. (Tr. 188).

On May 4, 2009, Rocky Sieben, a licensed clinical social worker, completed a behavioral health interview form. (Tr. 186). Claimant completed pastry school in January 2007. (Tr. 186). Mr. Sieben noted Claimant has depression, ADHD, anxiety, and marijuana abuse. (Tr. 187). Claimant reported a history of prescription medication abuse and depression, and a hospitalization in August 2008 for an overdose of aspirin. (Tr. 185). Claimant met with Mr. Sieben on June 3

and 24, 2009. (Tr. 184). On August 10, 2009, Claimant reported making positive lifestyle changes including going to a friend's house to bake. (Tr. 182).

In the October 14, 2009 progress note from Family Care Health Center, Mr. Sieben met with Claimant and found his appearance to be well-groomed and his thoughts organized. (Tr. 231). He assessed Claimant's GAF to be 57. (Tr. 231). Claimant returned on November 13, 2009. (Tr. 230).

In the Psychiatric Review Technique dated October 22, 2009, Dr. Kyle DeVore, a PhD, found Claimant to have an affective disorder, anxiety-related disorder, and substance addiction disorder, but the impairments to be nonsevere. (Tr. 197-204). With respect to functional limitations, Dr. DeVore determined Claimant to have moderate limitations in difficulties in maintaining concentration, persistence, and pace. (Tr. 205). Dr. DeVore opined that Claimant is capable of performing at least simple work tasks. (Tr. 207).

In the Mental Residual Functional Capacity Assessment, Dr. DeVore found Claimant to be moderately limited in his ability to understand and remember detailed instructions, and to maintain attention and concentration for extended periods. (Tr. 209). With respect to social interaction, Dr. DeVore found Claimant to be moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors and to changes in the work setting. (Tr. 209). Dr. DeVore noted Claimant has no difficulty with social interaction, and he would be able to do at least simple unskilled tasks. Claimant would be able to ask simple questions, understand/follow/carry out simple instructions and directions. (Tr. 209).

On December 10, 2009, Claimant returned for follow-up treatment and reported being out his medication. (Tr. 228). Claimant reported his depression to be stable on Celexa and

Trazodone and his treatment with the social worker going well. Dr. Zinck maintained his medication regime. (Tr. 228). Claimant returned to Mr. Sieben on December 14, 2009. (Tr. 227).

On January 8, 2010, Mr. Sieben noted Claimant's mood to be improved and his appearance to be well-groomed. (Tr. 226). Mr. Sieben noted his GAF to be 58. (Tr. 226). On January 22, 2010, Mr. Sieben noted Claimant smoked cigarettes and marijuana . (Tr. 223). Mr. Sieben found Claimant's mood to be unchanged on February 10, 2010. (Tr. 222). On February 26, 2010, Claimant reported taking a test for possible employment. (Tr. 221). Mr. Sieben found Claimant's mood to be improved. (Tr. 221). On March 22, 2010, Claimant reported thinking about working again because he would like to do things. (Tr. 220). Claimant indicated his problems with focusing would affect his job performance. Mr. Sieben provided a focus exercise. Claimant noted he would check Craig's list for coffee shop jobs. (Tr. 220). On April 13, 2010, Claimant reported feeling okay lately. (Tr. 219). Mr. Sieben noted his mood had improved. (Tr. 219). On May 5, 2010, Claimant reported feeling some stability, and Mr. Sieben assessed his GAF to be 58. (Tr. 218). On May 29 and June 1, 2010, Claimant met with Mr. Sieben. (Tr. 216-17).

On September 2, 2010, Dr. Karen Hampton completed a psychological evaluation on referral by Disability Determinations. (Tr. 234-41). Dr. Hampton noted that Claimant developed depressive symptoms in his last years living in California. (Tr. 234). Claimant reported being able to use public transportation. (Tr. 235). Claimant admitted to using marijuana at his sister's house. (Tr. 235). Claimant questioned whether he might have attention deficit disorder based on his poor history of poor focus-type symptoms. (Tr. 236). Dr. Hampton noted Claimant's medical

and counseling records show a man who has been treated for recurrent depression, generalized anxiety, and marijuana abuse. (Tr. 236). Claimant reported having problems getting transportation to his job and eventually being terminated for missing work. (Tr. 237). Dr. Hampton found his GAF to be 59 and found Claimant to have depressive symptoms that increased in past couple years due to struggles in independent living and balanced inter-dependent adult relationships, and tensions living with his parents. (Tr. 240). Dr. Hampton found Claimant to be able to recall instructions to an adequate degree, mild impairment in judgment, concentration, and complex reasoning, and mild difficulties in verbal comprehension and social skills. (Tr. 241). Dr. Hampton further noted that "[h]is dependent personality features and self-medication with substance abuse complicate his adjustment to his current circumstances since losing a romantic relationship and needing to rely temporarily on his parents." (Tr. 241). His ability to adapt to work-like settings is mildly limited especially in fast-paced work environments. (Tr. 241). In the Medical-Source Statement of Ability to do Work-Related Activities (Mental), Dr. Hampton found Claimant to have a mild impairment in concentration, judgment, and pace. (Tr. 242-44).

## IV. The ALJ's Decision

The ALJ found that Claimant met the insured status requirements of the Social Security Act on December 1, 2007, and he remained insured throughout the period of the decision. (Tr. 11). Claimant has not engaged in substantial gainful activity since December 1, 2007. The ALJ found that the medical evidence establishes that Claimant had the following severe impairments: a major depressive disorder and a generalized anxiety disorder, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ opined that Claimant has the residual functional capacity to perform a wide range

of unskilled work. (Tr. 11). The ALJ found that Claimant has moderate limitations in understanding, remembering and carrying out detailed instructions, maintaining attention and concentration for extended periods, accepting instructions and responding appropriately to criticism from supervisors, and responding appropriately to changes in a work setting, but he is able to understand, follow and carry out simple instructions and directions, and interact socially. (Tr. 11-12). The ALJ noted that Claimant has not had any exertional limitations. (Tr. 12). The ALJ found that Claimant is unable to perform his past relevant work as a coffee shop waiter. (Tr. 13).

The ALJ found Claimant was forty-one years old on December 1, 2007 and is now forty-four years old which is defined as a younger individual age 45-49. (Tr.13). The ALJ noted Claimant has more than a high school education. (Tr. 13). Considering Claimant's age, education, work experience, and residual functional capacity, the ALJ opined there are jobs that exist in significant numbers in the national economy that Claimant can perform such as a fast food worker, a packing/filling machine operator, and a bench assembler. (Tr. 14). The ALJ concluded that Claimant was not been under a disability from December 1, 2007, through the date of this decision. (Tr. 14).

## V. Discussion

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730

(quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the vocational expert failed to reconcile a conflict between his testimony and the Dictionary of Occupational Titled ("DOT"), as required by SSR 00-4P. Pursuant to SSR 00-4P, an ALJ has an affirmative duty to ask the vocational expert about any conflicts between their testimony and the DOT. Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704. It is true the Commissioner cannot rely on expert testimony that conflicts with the job classifications in the DOT unless there is evidence in the record to rebut those classifications. See Porch v. Chater, 115 F.3d 567, 572 (8th Cir. 1997).

Specifically, Claimant argues that a limitation to a one- or two-step task is inconsistent with a job as a fast food worker, packing/filling machine operator, or a bench assembler. The

Court disagrees. A job as a fast food worker, packing/filling machine operator, or a bench assembler has a reasoning level of 2. This level is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT Appendix C; Blocker v. Astrue, 2010 WL 5572743, at * 15-16 (E.D. Mo. Dec. 13, 2010). A job with a reasoning level of 2 is not inconsistent with a job requiring a one- or two-step instruction. Id. at 16.

In this case, the ALJ did not err in relying on the vocational expert's testimony. In the hypothetical, the ALJ found Claimant to have the ability to understand, follow, and carry out simple instructions and directions citing jobs classified at reasoning level two by the DOT. The level 2 reasoning is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT Appendix C; Blocker, 2010 WL 5572743, at *15-16. The dictionary defines "uninvolved" as "not involved," and in turn defines "involved" as "complicated, intricate." Webster's *Third New Int's Dictionary* 1191, 2499 (2002). There is no direct conflict between "carrying out simple job instructions" for "simple, routine and repetitive work activity," as in the hypothetical, and the vocational expert's identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate. A job with reasoning level of 2 is not inconsistent with a one- or two- step instruction. Blocker, 2010 WL 5572743, at *16. As such, there is no conflict between the vocational expert's testimony and the DOT.

Moreover, the Level 2 reasoning definition is an upper limit across all jobs in the occupational category, not a requirement of every job within the category. "[A] claimant's reliance on the DOT as a definitive authority on job requirements is misplaced because DOT

definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." Page v. Astrue, 484 F.3d 1040, 1045 (8th Cir. 2007) (internal quotation marks omitted); Moore v. Astrue, 623 F.3d 599, 604 (8th Cir. 2010) (noting the DOT levels are upper limits, not requirements because they offer the maximum requirements for each position; and not every job listed in that level has requirements as rigorous as those listed). "The DOT itself cautions that its description may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." Wheeler v. Apfel, 224 F.3d 891, 897 (8th Cir. 2000). "In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT." Id. The DOT is not the only source of valid information or the single most definitive authority covering every relevant job requirement. Hillier v. Social Sec. Admin,, 486 F.3d 359, 366-67 (8th Cir. 2007); Hall v. Chater, 109 F.3d 1255, 1259 (8th Cir. 1997); 20 C.F.R. § 416.960(b)(2). Vocational experts are specialists in employment and related factors whose testimony often constitutes substantial evidence upon which the ALJ can rely as in the instant case. See 20 C.F.R. § 416.960(b)(2); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991).

A review of the record shows that the ALJ did not ignore the reasoning limitations in the hypothetical in determining that the listed occupations encompassed suitable jobs. See Whitehouse v. Sullivan, 949 F.2d 1005, 1006 (8th Cir. 1991) ("[T]he ALJ could properly assume that the expert framed his answers based on the factors the ALJ told him to take into account."). Accordingly, the undersigned finds substantial evidence supports the ALJ's decision inasmuch as there was no conflict between the vocational expert's testimony and the DOT, and the ALJ properly relied on the testimony. See Page, 484 F.3d at 1045.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**. Judgment shall be entered accordingly.

Dated this  20th  day of September, 2013.

        /s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE